UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DENISE McCLAIN :
:
v. : C.A. No. 13-768L
:
CAROLYN W. COLVIN :
Commissioner of the Social Security :
Administration :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance ("SSDI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on December 10, 2013 seeking to reverse the decision of the Commissioner. On August 22, 2014, Plaintiff filed a Motion to Reverse Without a Remand for a Rehearing or, Alternatively, With a Remand for a Rehearing of the Commissioner's Final Decision. (Document No. 9). On October 31, 2014, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 12).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED and that Plaintiff's Motion to Reverse

Without a Remand for a Rehearing or, Alternatively, With a Remand for a Rehearing of the Commissioner's Final Decision (Document No. 9) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB (Tr. 497-503) and SSDI (Tr. 504-512) on May 17, 2011 alleging disability since January 22, 2011. (Tr. 497). Plaintiff's date last insured for DIB is December 31, 2013. (Tr. 558). The applications were denied initially in August 2011 (Tr. 374-386, 387-399) and on reconsideration on October 14, 2011. (Tr. 433-435, 436-438). Plaintiff requested an Administrative hearing. (Tr. 439). On August 2, 2012, a hearing was held before Administrative Law Donald P. Cole (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 344-373). The ALJ issued an unfavorable decision to Plaintiff on September 24, 2012. (Tr. 198-212). The Appeals Council denied Plaintiff's Request for Review on October 10, 2013, therefore the ALJ's decision became final. (Tr. 1-4). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's adverse credibility finding was flawed and unsupported by the record and that the ALJ did not accurately evaluate her longitudinal record of mental health treatment.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's credibility findings are adequately supported by the record and that Plaintiff has shown no error in the ALJ's interpretation of her mental health treatment records.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and

Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV.     THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.     Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6)

other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only

exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was thirty-eight years old on the date of the ALJ's decision. Plaintiff has a college degree and a CNA certificate. (Tr. 537). Plaintiff's date last insured for DIB is December 31, 2013. (Tr. 203). Plaintiff worked in the relevant past as a CNA, customer service representative, receptionist, daycare teacher and case aide. (Tr. 210). Plaintiff alleges disability primarily due to mental health impairments including bipolar disorder, depression, anxiety and pathological gambling. (Tr. 347-348).

Plaintiff received mental healthcare, including counseling, case management and psychiatric medication management through Gateway Health Care ("Gateway") since at least May 2009, prior to her alleged disability onset date. (Tr. 771-772). Early case management records indicate psychiatric problems with depression and anhedonia and document ongoing difficulties obtaining housing and medical care. (Tr. 771, 773, 775, 779, 781, 788, 792). Plaintiff's preoccupation with gambling was first noted in August 2009. (Tr. 794). She received psychiatric care from Barbara Mottinger, a psychiatric clinical nurse specialist, from April 22, 2011 through sometime prior to August 2012. (Tr. 165, 349-350, 362, 844-845). On one occasion, Plaintiff unilaterally stopped taking a prescribed psychiatric medication because she felt that it was too sedating. (Tr. 875). Gateway providers periodically noted Plaintiff to be "hypomanic during first 2/3 of interview. Hypertalkative with tangential speech," (Tr. 829) "very talkative and she has difficulty staying on point...exhibits rapid speech and has difficulty with concentration," (Tr. 834), "very talkative and at times it was a little difficult to understand her because she was talking so fast," (Tr. 840), "a little manic, she was very talkative and was talking very fast," (Tr. 843), "hypomanic state that is bordering on mania...this has gone on for several days," (Tr. 844), "rambling and pressured speech though less so," (Tr. 846), "speaks rapidly and changes subject often," (Tr. 847), and "her speech was tangential and hard to follow as she jumped from one subject to another." (Tr. 894).

Plaintiff continued to report ongoing gambling activity throughout her care at Gateway that is documented in her records, (Tr. 820, 831, 833, 839, 843, 854, 855, 857, 859, 877, 880, 882, 885, 887, 889, 891, 893), including the time period post-dating the ALJ's decision and leading up to the Appeals Council's denial to review the ALJ's decision. (Tr. 117, 124, 129, 133-134,140, 141, 144, 152, 157, 169, 171, 180). Plaintiff admitted to selling her food stamps for gambling money. (Tr. 140, 152, 831, 889, 898, 912). She also reported having a boyfriend with whom she went to the casino. (Tr. 833, 849). A counselor stated that "[s]he seems to realize that her gambling behavior affects her mood but does not know what else to do." (Tr. 890).

Plaintiff saw a psychiatrist, Dr. Warren Ong, on October 19, 2010, and reported that her housing situation at Safe Haven was her primary stressor; she had been gambling to the point of being "broke" because "it's the only exciting thing I have." (Tr. 804). Dr. Ong diagnosed bipolar disorder, social phobia, attention deficit hyperactivity disorder ("ADHD") and pathological gambling. Id. Plaintiff saw a Gateway staff psychiatrist, Dr. Robert Zielinski, for an intake assessment on December 16, 2010. (Tr. 810-814). Dr. Zielinski noted Plaintiff's existing diagnosis of bipolar disorder, "severe ongoing anxiety," depression that she described as "not too bad," and ongoing history of compulsive gambling; she received $200.00 per month in general public assistance and took the bus to Twin Rivers to gamble it away. (Tr. 810-811). Dr. Zielinski noted that Plaintiff had gone through treatment programs that were ineffective and that "she doesn't seem to really have a lot of motivation to stop." (Tr. 811). Dr. Zielinski noted "very poor functioning over the last two and a half years" with disorganization, trouble following plans and a history of being fired from her previous jobs as a CNA. (Tr. 812). On mental status examination, Plaintiff was quite distractible and sometimes lost track of questions, but had a stable affect without much outward indication of anxiety or depression. Id. She was reality oriented, alert and oriented times three, recalled three out of three words immediately, and two out of three after

two minutes and could remember her medications and how to take them. (Tr. 812-813). Dr. Zielinski diagnosed bipolar disorder, anxiety, and pathological gambling with rule-out diagnoses of dysthymia and learning disorders. (Tr. 813). He placed her GAF score at 45 currently and 45 to 50 over the past year. On July 26, 2011, Plaintiff underwent a consultative psychological evaluation with a State agency consultative psychologist, Sol Pittenger, Psy.D. (Tr. 737-740). Plaintiff reported a history of alternating between periods of depression and elevated mood, with current low mood, sleep disruption, increased appetite, diminished energy and fatigue. (Tr. 737). She had relationships with her mother, sister and two nephews, as well as a romantic relationship and friends with whom she communicated by Facebook and email. Id. She was currently unable to afford her past activities of going to plays or musicals and shopping; she had difficulties with concentration that interfered with reading or watching television. Id. She described her anxiety as pervasive in the context of other mood difficulties and stressors in her living environment. Id. She had a history of elevated moods, during which her energy level increased and her need for sleep diminished, her speech became rapid, she experienced racing thoughts and said inappropriate things, and had an increased tendency to gamble or spend money carelessly. Id. She had first experienced an episode of elevated mood about two years before; they occurred about four times per year and usually lasted about two weeks. (Tr. 738). While Plaintiff had difficulty motivating herself to cook or clean, in part because she felt her transitional housing program was "not a home to me," she was able to shop for groceries and other items independently, complete basic paperwork-type tasks, use a computer and interact with her boyfriend, friends, and her mother or sister. Id.

On formal assessment, Plaintiff's concentration appeared diminished. (Tr. 739). She exhibited poor task persistence and easy distractibility. Id. Dr. Pittenger noted that she presented with adequate grooming and cleanliness. Id. On mental status examination, her movements were within normal limits, her attitude was cooperative, her speech was within normal limits for rate and volume, her thought

process was clear and goal-directed, her affect was somewhat tense and constricted, her intelligence appeared average, she was fully oriented, her immediate recall was intact, her concentration was mildly diminished, her abstraction was intact, she displayed an adequate level of understanding of societal practices and institutions, her fund of information was intact, her short-term memory was mildly diminished, her judgment appeared to be fair and she did not appear to be capable of managing benefits if awarded. (Tr. 739-740). Dr. Pittenger diagnosed bipolar disorder and assessed a GAF score of 48 indicating serious functional impairment. (Tr. 740).

On August 12, 2011, state agency consultant reviewing psychiatrist, Dr. Thomas Bennett, reviewed Plaintiff's application file to date and completed a Psychiatric Review Technique assessment. (Tr. 381-382, 394-395). In the assessment, Dr. Bennett assessed Plaintiff with a severe affective disorder resulting in moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace; and no extended episodes of decompensation. (Tr. 381, 394). Dr. Bennett also performed a mental RFC Assessment, indicating that with respect to sustained concentration and persistence, psychological factors alone would not preclude her from performing routine tasks for two-hour blocks of time throughout an eight-hour workday; that she had no social interaction limitations; and that with respect to adaptation, she could adapt to modest workplace changes, use public transportation and recognize and avoid work hazards. (Tr. 382-384, 395-397).

On September 28, 2011, Plaintiff's treating psychiatric clinical nurse specialist, Barbara Mottinger, completed an Emotional Impairment Questionnaire in support of Plaintiff's disability application. (Tr. 1258-1259). In it, Nurse Mottinger indicated that Plaintiff's emotional impairments of bipolar disorder, generalized anxiety disorder, and psychotic disorder not otherwise specified significantly limited her ability to engage in ongoing, full-time substantial gainful activity; that

Plaintiff's symptoms were severe; and that she could not sustain competitive employment on a full-time, ongoing basis. Id. Nurse Mottinger also completed a Supplemental Questionnaire as to RFC, indicating that Plaintiff was severely limited in her abilities to understand, remember and carry out instructions and respond to customary work pressures, with a moderately severe limitation in her ability to respond appropriately to supervision, and moderate limitations in her abilities to maintain attention and concentration in a work setting, perform complex tasks and perform varied tasks. (Tr. 1260-1261).

On October 24, 2011, a State agency consultant reviewing psychologist, Mary Ann Paxson, Ph.D., performed a second review of Plaintiff's records in connection with Plaintiff's request for reconsideration of her initial denial. Dr. Paxson's Psychiatric Review Technique assessment found a severe affective disorder, mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no sustained episodes of decompensation. (Tr. 407). Dr. Paxson's Mental RFC Assessment mirrored Dr. Bennett's. (Tr. 408-410).

### A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's mood/bipolar disorder and anxiety disorder significantly limited her ability to perform basic work activities and thus were "severe" impairments as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 204). However, at Step 3, the ALJ did not find that Plaintiff's impairments, either singly or in combination, met or medically equaled any of the Listings. Id. As to RFC, the ALJ found Plaintiff to be limited to work involving simple and routine tasks with no interaction with the public and limited interaction with co-workers and supervisors. (Tr. 205). Based on this RFC and testimony from the VE, the ALJ concluded that Plaintiff was capable of performing certain unskilled light and sedentary

jobs such as mail clerk, assembler and jewelry stringer/painter and thus she was not disabled within the meaning of the Social Security Act. (Tr. 211-212).

**B.     The ALJ's Credibility Finding is Not Supported by Substantial Evidence**

In making his RFC finding, the ALJ found that Plaintiff was not totally credible regarding the intensity, persistence and limiting effects of her alleged symptoms and limitations. (Tr. 206). The ALJ's credibility determination was based, in part, on his evaluation of Plaintiff's treatment history and his findings that Plaintiff "unilaterally stopped taking medications and persisted in gambling though she understood the adverse effect this had on her mood." (Tr. 209). As support, the ALJ cites generally to Exhibit B16F which consists of 147 pages of mental health treatment records from May 28, 2009 to April 24, 2012. The ALJ does not point to any specific entries in those records or other support for his general conclusions regarding Plaintiff's treatment history.

In defending the ALJ's findings, Defendant is unable to point to support in the record for the ALJ's statement that Plaintiff "unilaterally stopped taking medications." Defendants points only to one occasion in 2011 when Plaintiff discontinued one medication after two months due to excess sedation. (Tr. 875). The record, however, reflects that Plaintiff was taking several psychiatric medications at the time and that the medication she discontinued had been prescribed two months earlier as a "trial." (Tr. 872). Further, Plaintiff informed her treatment provider that she discontinued the medication and why, and the provider prescribed a replacement for the discontinued medication. (Tr. 875). Finally, the record reflects that Plaintiff's various medications were adjusted or changed numerous times in 2011 and 2012 by her treatment provider to respond to reported side effects. (Tr. 844, 846, 851, 857, 872, 875, 879 and 917). The ALJ's reliance on a single occasion when Plaintiff unilaterally stopped a single medication due to side effects is inconsistent with the totality of the treatment records and does not

provide any evidentiary basis for an adverse credibility determination. Accordingly, the ALJ's finding is not supported by substantial evidence.

Plaintiff also takes issue with the ALJ's finding that her credibility was undermined because she refused to stop gambling even though she knew it had a negative effect on her mood. Again, this finding is not supported by substantial evidence. It is undisputed that the record reflects that Plaintiff had a "compulsive gambling problem" (Tr. 811) which had negative impacts on many aspects of her life. When discussing Plaintiff's symptoms related to her bipolar disorder and depression, Dr. Pittenger noted that Plaintiff reported a history of discrete episodes of elevated mood which included reduced sleep, rapid speech, racing thoughts, a tendency to say inappropriate things or divulge information, and an increased tendency toward gambling or careless spending. (Tr. 737). Clinical Nurse Mottinger also indicated that Plaintiff experienced manic episodes which included increased gambling and spending. (Tr. 1258). Furthermore, Dr. Ong indicated that, during a manic phase, Plaintiff's thoughts were highly distracted and her behavior could be impulsive, especially with gambling. (Tr. 693).

In his decision, the ALJ posits that Plaintiff's credibility is undercut by her persistent gambling despite knowledge of the adverse effects. (Tr. 209). In other words, Plaintiff is not credible because she was not compliant with the treatment suggestion that she stop gambling. However, the record contains multiple references to a diagnosis of pathological gambling (Tr. 127, 804 and 813) as well as noting that her manic episodes included increased gambling. (Tr. 737, 1258). It is not reasonable to suggest that someone with Plaintiff's mental health history and record of compulsive gambling up to the brink of homelessness could simply stop if she was told to by a treatment provider to do so.

The ALJ provides no basis for his finding that Plaintiff's persistent gambling undercuts the credibility of her complaints and alleged limitations. If anything, her consistent record of compulsive

and destructive gambling supports her credibility in this case. Accordingly, the ALJ's finding in this regard is not supported by substantial evidence.[1]

## VI. CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED and that Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, With a Remand for a Rehearing of the Commissioner's Final Decision (Document No. 9) be GRANTED. Further, I recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 18, 2014

---

[1] Since the ALJ based his evaluation of the medical evidence and his RFC assessment in part on his evaluation of Plaintiff's treatment history and credibility, it is impossible to unscramble the egg and determine if the errors found herein are harmless or not, in terms of the ultimate outcome.